IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                   Case No. 6:11-CR-60062-AA

       Plaintiff,                           OPINION AND ORDER

    v.

THOMAS WILLIAM CORNELIUS, JR.,

       Defendant.

_____

AIKEN, Chief Judge:

Defendant is charged with several counts of felon in possession of a firearm, felon in possession of stolen firearms, and knowingly possessing stolen firearms. Defendant moves to suppress all evidence obtained directly and indirectly from a search of his vehicle following a traffic stop, on grounds that the duration of the stop constituted an unreasonable seizure under the Fourth Amendment. Defendant also moves for the production of records from his probation file.

1    - OPINION AND ORDER

On February 6, 2013, the court viewed a recording of the traffic stop and heard testimony from five witnesses. The parties subsequently filed additional exhibits and briefing. After review of the testimony, exhibits, and arguments, defendant's motion to produce is granted in part, and the motion to suppress is denied.

## BACKGROUND

On May 3, 2011, Oregon State Trooper Jo Gardiner observed three cars traveling at high rates of speed on Highway 101 near Winchester Bay, Oregon. Gardiner clocked two of the vehicles at speeds far in excess of the posted speed limit of fifty-five miles per hour; Gardiner believed the vehicles might be racing each other. Gardiner activated her patrol lights and pulled over the first vehicle, a white Cadillac. As the second car drove by, Gardiner motioned to the driver, and he also pulled over to the side of the highway. Stephen Robert Holm was driving the white Cadillac, and defendant was driving the second vehicle. Gardiner testified that after defendant pulled over, he backed up the vehicle and positioned it closer to the fog line of the highway.

At approximately 2:51 p.m., Gardiner exited her vehicle, contacted Holm briefly, and approached the driver's side of defendant's vehicle. Gardiner chose to approach defendant on the driver's side to maintain visibility of the Cadillac, given the slope of the highway shoulder. Because defendant had positioned his vehicle so close to the fog line, Gardiner was standing near or in

2  - OPINION AND ORDER

the roadway and frequently looked away from defendant and toward oncoming traffic for purposes of her safety.

Gardiner told defendant that his speed was about ninety miles per hour, and defendant responded that he thought his speed was about seventy miles per hour. Gardiner asked defendant whether he knew the drivers of the other two cars and if they were racing each other; defendant denied any connection with the other drivers.

Gardiner asked for defendant's driver's license, registration, and proof of insurance, and defendant appeared nervous but provided his driver's license. Defendant told Gardiner that the car he was driving was an Enterprise rental car. When asked for the rental agreement, defendant responded that he left it at a hotel in Seattle, Washington, where he was visiting his girlfriend. At some point, defendant also told Gardiner that he recently had traveled to Hawaii.

Defendant's driver's license listed an address on N. Bay Road in Coos Bay, Oregon. When Gardiner asked if that was his current address, defendant stated it was not. About this time, Gardiner noticed that defendant had placed his hand inside a bag on the front passenger seat and rummaged around as if searching for something. Gardiner stepped back from the vehicle, partially in the roadway, as she believed defendant might be trying to access a weapon or some hidden object. Defendant eventually removed his hand from the bag.

3    - OPINION AND ORDER

Defendant then told Gardiner that he could not remember the house number of his current address but recalled it was a Green Acres address, perhaps "64091." (After his arrest, defendant's address was established as 94041 Green Acres Lane, Coos Bay.) He also told Gardiner that he had notified the Department of Motor Vehicles of his correct address.

Given his demeanor and answers to her questions, Gardiner asked defendant if he had ever been arrested. Defendant replied that he had been arrested for Felon in Possession of a Firearm and Robbery I and was on federal parole for those offenses. Gardiner then asked defendant about his terms of parole, and defendant stated that he was subject to the usual conditions of supervision with no mandatory stipulations. In response to further questioning, defendant told Gardiner that his probation officer was Scott Lewis, that he had spoken to Lewis five or six weeks ago, and that Lewis had given him permission to travel out of state. Defendant maintains that he attempted to show Gardiner his travel permit from Lewis via his iPhone, but she waved away his attempt. Gardiner did not recall defendant's attempt to show her a document on his phone, though she testified that defendant could have done so.

Gardiner asked defendant if he had anything on his person or in his vehicle which he should not have, or whether she would find anything if she looked, and defendant answered "No." Gardiner's initial questioning lasted about three minutes, until 2:54 p.m.

4    - OPINION AND ORDER

Gardiner then walked over to Holm's vehicle for a moment and returned to her patrol car at 2:55 p.m. Gardiner performed a records check on defendant and learned from dispatch that defendant had a valid driver's license, was on post-prison supervision in Multnomah County for Robbery I, and was a potential armed career criminal. At approximately 2:58 p.m., Gardiner requested non-emergency backup assistance.

At 3:01 p.m., Gardiner walked over to defendant's car and told him that she wanted to ask him more questions and that he was not free to leave. At approximately the same time, Chief Kneaper, Chief of Police for the Confederated Tribes of Coos, Lower Umpqua, and Siuslaw Indians, and Kenneth Hull, a security officer, arrived as a courtesy in response to Gardiner's request for backup assistance.

Gardiner walked over to Holm and questioned him about whether he and defendant or the third car were racing. Gardiner suspected that Holm was driving under the influence of intoxicants and administered field sobriety tests. Afterward, Gardiner arrested Holm and placed him in the back of a patrol car. Chief Kneaper and Hull stood by while Gardiner administered the sobriety tests and departed when Holm was taken into custody.[1] About that time, Oregon State Trooper Kristopher Brandon arrived. Gardiner's encounter with Holm lasted approximately eighteen minutes, until 3:19 p.m.

---

[1]Neither Chief Kneaper nor Hull possessed current training and/or authorization to conduct field sobriety tests.

5    - OPINION AND ORDER

Gardiner told Brandon that she suspected weapons were located in defendant's vehicle, and that defendant was on parole for robbery and assault. At 3:21 p.m., Gardiner and Brandon then approached defendant, who had remained in his vehicle. Gardiner asked defendant to exit the vehicle and accompany her for issuance of a citation. Gardiner again asked defendant if he had anything in his car he should not have, such as knives, guns, drugs, or the like. Defendant replied "No." Gardiner then asked defendant if he would mind if she searched his vehicle. Defendant consented to the search.

Brandon conducted a search of defendant's vehicle and found a stun gun in the bag on the front seat and two firearms in the trunk, one of which had been reported stolen. Gardiner and Brandon arrested defendant on three counts of unlawful possession of firearm. The discovery of the stun gun and firearms in defendant's car led to further investigation following his arrest, resulting in the discovery of additional firearms.

DISCUSSION

A. Motion to Produce Probation Records

Prior to the suppression hearing, defendant moved to produce records from his file with the United States Probation Office to show that his Probation Officer granted him permission to travel to Seattle and Hawaii. Defendant contends that he attempted to show Gardiner his travel permit via his iPhone, and that proof of such

permission would have dispelled Gardiner's suspicions that he was violating the terms of his parole by traveling out of state, thus negating any reasonable suspicion to detain him for further investigation into suspected parole violations.

Initially, I intended to reserve ruling on the motion to produce until the parties presented testimony and evidence at the suppression hearing, given that the issue is whether Gardiner's suspicions were reasonable based on the facts known to her, not whether her suspicions were later proven correct or incorrect. However, after discussing the issue with both counsel, I ordered the Probation Office to produce certain records for the court's review. Records of defendant's contacts with his Probation Officer were produced, and, as I indicated at the suppression hearing, those records did not include permission to travel out of state. Subsequent to the hearing, however, the court received additional records reflecting that defendant's federal Probation Officer, Scott Lewis, gave him permission to travel to Hawaii in April 2011 and to Seattle in May 2011. These records were provided to defendant, and the motion to produce is granted to that extent.

B. Motion to Suppress Evidence

Defendant moves to suppress all evidence obtained as a result of the search of his vehicle. Defendant does not dispute that Gardiner had probable cause to stop his vehicle, and that he consented to the search of his vehicle. Rather, defendant argues

7   - OPINION AND ORDER

that the stop was unduly delayed because Gardiner could have issued him a speeding citation after she confirmed he had a valid drivers license, but instead she detained him for another eighteen to twenty minutes while she attended to Holm. Defendant thus argues that Gardiner unreasonably detained him for purposes unrelated to the traffic stop in violation of the Fourth Amendment.

Generally, a traffic stop must be limited in duration to the time necessary to effectuate the purpose of the stop. Melendres v. Arpaio, 695 F.3d 990, 1000 (9th Cir. 2012) ("[A] detention beyond the duration of the initial traffic stop must be supported independently by reasonable suspicion of criminality."). At the same time, however, "mere police questioning does not constitute a seizure," and no reasonable suspicion is required to justify questioning that does not prolong a lawful stop. Muehler v. Mena, 544 U.S. 93, 100-01 (2005) (citation omitted); United States v. Turvin, 517 F.3d 1097, 1101-03 (9th Cir. 2008). Thus, an officer may prolong a traffic stop if based on a reasonable suspicion of illegal activity supported by "suspicious factors that are particularized and objective." United States v. Mendez, 476 F.3d 1077, 1080 (9th Cir. 2007) (citation and quotation marks omitted). Ultimately, the court must engage in a "fact-specific reasonableness inquiry" and examine the "totality of the circumstances" to determine whether the stop was reasonable. Turvin, 517 F.3d at 1101.

8    - OPINION AND ORDER

In this case, Gardiner's initial questioning of defendant
related to the purpose of the stop and sought background
information such as defendant's identification, address, and car
registration. Notably, defendant could not recall his home address
with accuracy, did not have the paperwork for the rental car, and
stated that he had left the paperwork in a Seattle, Washington
hotel. Defendant also confirmed that he recently traveled to Hawaii
as well. When asked by Gardiner, defendant admitted that he had
been arrested for Felon in Possession of a Firearm and Robbery I
and was on parole for those offenses.[2] Based on this information
and defendant's demeanor and actions (i.e., pulling over close to
the fog line and rummaging in a bag), Gardiner suspected that
defendant had given her an incorrect address, may have been driving
the rental car without permission or insurance, and may have been
in violation of his parole conditions. Gardiner thus decided to
conduct follow-up investigation regarding defendant's rental car
and address and possibly contact his probation officer.

Defendant attempts to parse out and discount each suspicion
raised by Gardiner and offers "innocent" explanations for each of
her suspicions, particularly her suspicion that defendant violated
his parole conditions by traveling out of state. Defendant

---

[2]To the extent Gardiner's questions about defendant's
criminal history were unrelated to the purpose of the stop, they
were brief and did not prolong the stop. Turvin, 517 F.3d at
1103.

9    - OPINION AND ORDER

emphasizes that he asked and received permission to travel to both
Hawaii and Seattle, and that he offered to provide this information
to Gardiner. However, the court must evaluate the totality of the
circumstances presented rather than each distinct piece of
information. "Although each fact, standing alone, is completely
legal, conduct innocent in the eyes of the untrained may carry
entirely different messages to the experienced or trained
observer." Ramirez v. City of Buena Park, 560 F.3d 1012, 1021 (9th
Cir. 2009) (internal quotation marks and citation omitted).

That defendant did, in fact, have permission to travel out of
state does not render unreasonable Gardiner's suspicion that he did
not, given the nature of his prior offenses, his failure to provide
an accurate address, and his lack of paperwork for the rental car.[3]
To support a reasonable suspicion of criminal activity, an
officer's factual determinations need not be correct, but only
reasonable given the facts known. See, e.g., United States v.

_____

[3]It is undisputed that Gardiner did not see his travel
permit; even if defendant had shown it to her, the permit
indicated that he would be traveling to Seattle in his personal
vehicle, a grey Nissan, not in a red rental car. Def.'s Supp.
Mem. Ex. 128.

Defendant also contends that his email communication with
his probation officer "impeaches" Gardiner's testimony that
defendant stated he had not contacted his probation officer for
five or six weeks. I find any discrepancy minor and irrelevant. I
likewise find irrelevant the disclosure of potential impeachment
material, doc. 61 (under seal), given that defendant does not
dispute that he was speeding, provided an inaccurate address, did
not possess the car rental agreement, was on parole for felony
convictions, and admitted he had traveled out of state.

10   - OPINION AND ORDER

Hartz, 458 F.3d 1011, 1017-18 (9th Cir. 2006). Given Gardiner's fourteen years of experience as an Oregon State Trooper, her observations of defendant's demeanor and actions, his failure to provide an accurate address or rental car information, and his status as a parolee and potential armed career criminal, I find that Gardiner had reasonable suspicion to continue her investigation of defendant. United States v. Mayo, 394 F.3d 1271, 1276 (9th Cir. 2005) (an investigative detention may be prolonged where "new grounds for suspicion of criminal activity continued to unfold").

With respect to the duration of the stop, Gardiner's questioning and detention of defendant during the records check lasted a mere nine or ten minutes before she attended to Holm. Mendez, 476 F.3d. at 1079-80 (a records check with dispatch is an expected part of a traffic stop and does not constitute undue delay). Given that Gardiner requested consent to search defendant's vehicle almost immediately after processing Holm, any extension of the stop did not result from her questioning of defendant but from her decision to question Holm before completing her investigation of defendant. Under the circumstances, I find that Gardiner's actions were reasonable.

A defendant does not have "a right to be released the instant the steps to check license, registration, and outstanding warrants, and to write a ticket, ha[ve] been completed." Turvin, 527 F.3d at

11   - OPINION AND ORDER

1103 (citation omitted). Here, Gardiner pulled over two drivers for speeding and perhaps racing. She could not question and process both drivers simultaneously; one driver would necessarily wait while the other was processed. Given that Holm was waiting when Gardiner first questioned defendant, it was not unreasonable for her to approach and question Holm before she returned to defendant, particularly when Gardiner initially suspected the two of racing each other.

Moreover, Gardiner was faced with a driver who could not establish lawful possession of the vehicle he was driving, could not recall his address with accuracy, had been convicted of felony crimes, was on parole, and admitted to recently traveling out of state. Further, the records check revealed that defendant was a potential armed career criminal. As a result, Gardiner sought backup assistance before questioning him further. "For the police to be vigilant about crimes is, at least broadly speaking, a good thing." Turvin, 517 F.3d at 1102 (citation omitted); see Mayo, 394 F.3d at 1276 (holding that forty minutes of questioning and investigation of driver was not unreasonable).

Finally, I note that Gardiner did not prolong the stop for unnecessary reasons or to discover information that would justify her detention of defendant. Gardiner already possessed reasonable suspicion to warrant further investigation, and she simply interrupted her questioning of defendant to await backup and attend

12   - OPINION AND ORDER

to another driver she had stopped simultaneously. See Liberal v. Estrada, 632 F.3d 1064, 1081 (9th Cir. 2011) (prolonged detention of forty-five minutes was unreasonable where "the officers were not waiting for backup. They were not waiting for investigatory checks to be run or asking [] questions that would confirm or dispel their suspicions quickly (or at all)"). Therefore, Gardiner's questioning of Holm was related to the stop of both drivers, and she pursued her investigations diligently. See Mayo, 394 F.3d at 1276 (forty-minute detention was reasonable where officers "promptly" investigated multiple inquiries "as they arose").

In sum, based on the totality of the circumstances, Gardiner articulated specific factors which, when combined, supported a reasonable suspicion of criminal activity. Further, the duration of the stop was reasonable, and all evidence obtained from the search of defendant's vehicle is admissible.

CONCLUSION

Defendant's Motion to Produce U.S. Probation Records (doc. 51) is GRANTED in part as set forth above, and the Motion to Suppress Evidence (doc. 31) is DENIED.

IT IS SO ORDERED.

DATED this 11th day of April, 2013.

_____
Ann Aiken
United States District Judge

13  - OPINION AND ORDER