IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

    Plaintiff,

v.

THOMAS WILLIAM CORNELIUS, JR.,

    Defendant.

Case No. 6:11-CR-60062-AA

OPINION AND ORDER

AIKEN, Chief Judge:

    Defendant is charged with nine counts of felon in possession of a firearm. The charges against defendant arose after a traffic stop and search of a rental vehicle driven by defendant. Officers found stolen firearms in the vehicle and subsequently connected defendant to other firearms stolen during residential burglaries.

    Defendant previously moved to suppress the firearms found in the rental car, as well as all other evidence discovered as a result of the traffic stop and search. Defendant argued that Trooper Jo Gardiner impermissibly extended the traffic stop

1    - OPINION AND ORDER

beyond its purpose, rendering it unreasonable and unconstitutional under the Fourth Amendment. Based on the evidence and testimony presented, the court denied the motion to suppress and also a subsequent motion for reconsideration. Defendant now moves to "re-open" his suppression motion and requests a hearing to determine whether the audio from Trooper Gardiner's recording system was tampered with or deleted from the materials provided during discovery. The motion is denied.

First, defendant presents no credible evidence to support his allegations. Defendant emphasizes that one video file produced in discovery "had the audio turned on" after defendant was placed in Gardiner's patrol car at a later time in the encounter, "and the listener can hear sounds and voices within Trooper Gardiner's patrol car." Def.'s Motion to Re-Open at 2. However, the DVD provided by defendant reflects that the audio was recorded from inside Trooper Gardiner's patrol car and not via her wireless microphone. Id. Ex. 1. This evidence does not necessarily mean that the audio via Trooper Gardiner's wireless microphone was operable much earlier in the encounter. Further, the DVD recording reflects no movement by Trooper Gardiner to adjust the microphone when the audio stopped.

Moreover, when the government asked about the audio problems in the recording system, the Oregon State Police

2    - OPINION AND ORDER

responded that it "found [the audio aspect] of the system particularly problematic and this issue played a key role in OSP's decision to abandon the system in favor of another. Very often there was no audio at all and troopers gave up trying to make it work." Def.'s Motion to Re-Open, Ex. 3. Thus, audio problems would not be considered unusual. Granted, it is unclear why other recordings of the encounter do not include the audio from the patrol car. Regardless, I do not find that the evidence supports a claim of tampering or other alteration so as to warrant the hearing requested by defendant.

Second, any alleged "tampering" of the audio of the traffic stop would have absolutely no bearing on the suppression of evidence. Defendant has never disputed that Trooper Gardiner had probable cause to stop his vehicle or that he consented to the search of his vehicle. Rather, defendant has steadfastly maintained that Trooper Gardiner unreasonably detained him for purposes unrelated to the traffic stop and that the stop and his consensual search were therefore unconstitutional. Defendant argues that his answers to Gardiner's initial questions – which she allegedly denied or mischaracterized during her suppression hearing testimony – should have assuaged any concerns she had regarding criminal activity and rendered her suspicions and the extended stop unreasonable.

3       - OPINION AND ORDER

However, as I noted in my denial of defendant's motion to reconsider, defendant did not dispute that he was speeding, provided an inaccurate address, did not possess the car rental agreement, was on parole for felony convictions, and stated he had traveled out of state. These particularized and articulable facts alone would have justified further investigation of defendant, regardless of Trooper Gardiner's alleged lack of veracity regarding other statements. Further, Trooper Gardiner did not prolong the stop to obtain information that would justify her detention of defendant; rather, she interrupted her questioning of defendant to await backup and attend to the driver she had stopped simultaneously.

Regardless of whether the audio recording would confirm defendant's suspicions about Trooper Gardiner's alleged misrepresentations, my findings would remain the same. For example, defendant maintains that the audio cut out at a "critical time" while he was answering Trooper Gardiner's questions. Specifically, defendant contends that he told Gardiner he had contacted his federal probation officer within the past five or six <u>days</u> rather than the five or six <u>weeks</u> to which Gardiner testified. However, as I indicated in an earlier ruling, any discrepancy was minor, irrelevant, and not given much weight when determining the issue of reasonable suspicion.

4    - OPINION AND ORDER

Rather, in denying the motion I primarily relied on the undisputed facts that defendant was speeding, provided an inaccurate address, did not possess the car rental agreement, was on parole for felony convictions, and admitted he had traveled out of state. All of these factors supported Trooper Gardiner's decision to investigate further.

Next, defendant maintains that the recently-discovered audio in the patrol car calls into question Trooper Gardiner's testimony that she ran a license plate check during the initial stop. The audio recording includes a request by dispatch for the license plate of defendant's rental car, establishing that Gardiner did not run an earlier license plate check as she had testified. However, as emphasized by the government, Trooper Gardiner testified that she could not recall exactly when she requested a license plate check. Regardless, I find this issue irrelevant.

Additionally, defendant contends that the full audio recording would refute Gardiner's testimony that she was suspicious that defendant was traveling without luggage, even though he claimed to have recently traveled to Hawaii and was coming from Washington State. Defendant maintains that he did not tell Gardiner about his travel to Hawaii until after he was removed from his vehicle. Again, I did not rely on this part of

5    - OPINION AND ORDER

Trooper Gardiner's testimony when finding the stop reasonable under the circumstances and uncontested evidence.

Defendant also maintains that the audio would confirm his assertion that he offered to show Trooper Gardiner, via his iPhone, a travel pass from his federal probation officer authorizing travel to Washington State. However, even if defendant had shown the travel pass to her, it indicated that defendant had permission to travel to Seattle in his personal vehicle, a grey Nissan truck, not in a red Dodge rental car. Def.'s Motion to Re-Open, Ex. 4. Thus, the travel pass would not have assuaged Gardiner's concerns about defendant's travel and his inability to provide registration for the rental car. Moreover, the fact that defendant actually had permission to travel out of state does not render unreasonable Gardiner's suspicion that he did not, given the nature of his prior offenses, his failure to provide an accurate address, and his lack of paperwork for the rental car. To support a reasonable suspicion of criminal activity, an officer's factual determinations need not be correct, but only reasonable given the facts known. See, e.g., United States v. Hartz, 458 F.3d 1011, 1017-18 (9th Cir. 2006).

Thus, the uncontested evidence supported a reasonable suspicion of criminal activity which justified Trooper

6    - OPINION AND ORDER

Gardiner's questioning of defendant, and her request for assistance before proceeding. See United States v. Mayo, 394 F.3d 1271, 1276 (9th Cir. 2005) (forty minutes of questioning and investigation of driver was not unreasonable).

Moreover, defendant's motion to suppress challenged the duration of the stop; Trooper Gardiner's questioning and detention of defendant during the records check lasted nine or ten minutes before she attended to another driver stopped simultaneously. United States v. Mendez, 476 F.3d. 1077, 1079-80 (9th Cir. 2007) (a records check with dispatch is an expected part of a traffic stop and does not constitute undue delay). Once finished with the other driver, Trooper Gardiner almost immediately requested consent to search defendant's vehicle. Therefore, any extension of the stop did not result from her questioning of defendant but from her decision to question the other driver before completing her investigation of defendant. See Liberal v. Estrada, 632 F.3d 1064, 1081 (9th Cir. 2011) (prolonged detention of forty-five minutes was unreasonable where "the officers were not waiting for backup. They were not waiting for investigatory checks to be run or asking [] questions that would confirm or dispel their suspicions quickly (or at all)").

7    - OPINION AND ORDER

Finally, defendant argues that the suppression motion should be reopened because defendant's former counsel failed to adequately impeach Trooper Gardiner's testimony that she was concerned for her safety and that defendant erroneously told her that he had no "mandatory stipulations" on parole. Given former counsel's rather hostile cross-examination of Trooper Gardiner with respect to every statement she made during the suppression hearing, this allegation is without basis. Even if counsel's cross-examination of Gardiner was deficient (and I find that it was not), it was not prejudicial.

## CONCLUSION

In sum, no basis exists to reopen the suppression motion, and defendant's motion (doc. 187) is denied.

IT IS SO ORDERED.

Dated this 18th day of February, 2015.

_____
Ann Aiken
United States District Judge